Peralta. With the court's permission, I'd like to reserve one minute of rebuttal. Sure, that's fine. Thank you, DeCastro. Thank you. May it please the court. My name is Cesar DeCastro and I represent Hamlet Peralta. Hamlet Peralta sits in MCC after the government has conceded virtually every fact it vehemently argued against in multiple bail applications before the district court and this court. Mr. Peralta sits in jail despite pretrial services' unwavering position that he should be released on bail. Hamlet Peralta, a single United States citizen with no children, sits in jail because after losing his business and not being able to pay his rent, he took a temporary job in Georgia supervising the renovation of an apartment complex. Could you explain to me what the Georgia state conviction is that the district court relied on? Or sorry, the state conviction. It may not be a Georgia state conviction. There is no state conviction. Mr. Peralta has two matters that were pending, not pending. He has a conditional discharge out of New York state court, which was related to a misdemeanor assault, and an open tax matter. It was a conditional discharge on a tax matter that there has been no, it's still ongoing, if you will. Criminal proceedings? Yes. He pled guilty. He has a conditional discharge. He will receive a non-criminal record as a result of that. And the court relied on those arrests. In fact, we have no problem if they want to rely on that, because in fact, Mr. Peralta traveled during the tax case to the Dominican Republic with Judge Carroll's consent. They gave him his passport. He went to the Dominican Republic multiple times to visit his dying father, his father who has died while he was sitting in the MCC during this case. He traveled. He returned. I said to Judge Forrest in the lower court, she need not look anywhere else. If you want to see if Mr. Peralta respects the authority of the court, he returned. In fact, the government conceded. There is a difference in the exposure in the state proceeding, and in this case right here, the guideline range was seven to nine years, so there was greater incentive to flee here? Yes, Judge. I would think that's right. He was still facing potential state prison time in the state case. A person had never done any jail time in his life, so that was significant. Was that a misdemeanor? No, it was a felony matter. Judge Carroll was a sitting Supreme Court judge. He was indicted in that matter, and in fact, it was going to be resolved with a conditional discharge non-criminal record. It relates to him paying back taxes. He was facing exposure, and you're right, Your Honor. He faces significant exposure under the guidelines. But first, that does not mean simply we can point to how much exposure the defendant has to say that he is not entitled to bail. We're not asking for him to be released on his own recognizance. We never have. We have always argued that we simply want a reasonable bail package that would be difficult for the family to make, but not unattainable. Is this the second appeal from the denial of bail? This is, Judge. What's happened since we first rejected your first appeal? So the original rejection, the summary order, indicated that Judge Forrest's order was affirmed without prejudice to renewal should, for example, the defendant want to provide proof that he was working in Georgia as well as an appraisal report. I went back before Judge Forrest as soon as I could with, in fact, that evidence. I provided the court with over 300 pages of email evidence that she has since criticized as redundant. Redundant would have been the over 1,000 emails I could have produced that established that Mr. Peralta was intricately involved in the project down in Georgia. In fact, that he was working. Your Honor, may I continue to answer your question? Please continue. Thank you. Judge Forrest, in the original bail application, her biggest critique of us was that we did not prove that he was working in Georgia. And I proved it. I proved it. The government conceded it. That is not an issue anymore. And I also proved that his sister's property is not encumbered by liens, as she had speculated before. And so since that application- The property here in New York. I'm sorry, Judge. That's the property in New York. Yes, that is in New York. And so since we had a renewed bail application, the government had shifted its theory. It is now no longer solely flight. It was seeking detention based on flight and danger to the community because it had alleged that Mr. Peralta was defrauding his employer that they originally said didn't exist- Georgia employer. His Georgia employer that they originally had said didn't exist, that he had been defrauded. Because the money wasn't being paid back that he had borrowed. Correct. Partially that because he said that in a joint bank account, an account that they both have authority to utilize, he had engaged in $100,000 in unauthorized expenses. They pulled back off of that and now have said $29,000. Judge Forrest wanted a hearing to hear from Mr. Gaga. The government chose not to call Mr. Gaga. We welcomed that because as we have proffered all along, he was working and he was working on a significant project. A project that the district court has criticized and belittled that a project that was going to potentially yield over $4 million in profit to USA management. A portion of which Mr. Peralta would realize and then be able to pay back Mr. Gaga and move on with his life and pay back his taxes. Thank you, Mr. DeCastro. Thank you, Judge. We'll still give you the one minute. Ms. Schor. May it please the court. My name is Lauren Schor and I am an assisting U.S. attorney in the Southern District of New York. I represent the United States on this appeal and I represented the United States in the bail proceeding below. Judge Forrest did not err, particularly clearly err, in finding that the defendant posed a serious risk of flight and a danger to the community based on the record before the court. Judge Forrest also did not err in considering alternative conditions to release and finding that there are no conditions or combination of conditions that would reasonably assure the appearance of the defendant or the safety of the community. Judge Forrest considered all of the evidence before her in this new. It does seem that there's been a shifting target here, that there were earlier objections to bail and they were overcome and suddenly there were additional reasons raised. Your Honor, the additional reasons that were raised, just to be clear, were based on new facts that were presented to the government. New facts that the government did not have, did not know of at the time that it made its first detention argument on the basis of flight. After the case was sent back to the district court and the defendant, or I should say the case was affirmed by this court, the defendant filed a new bail application and the government continued to pursue an argument based on risk of flight. But in addition, based on the evidence that was put forward by the defendant, added a second alternative argument, danger to the community. We continued to make... It was the non-payment of the loan, or what has been... Correct, Your Honor. It was both the non-payment of the loan and the misuse of funds from the defendant's employer, Mr. Gaga. The government... Or expenses that weren't authorized for the use of that business. That's correct, Your Honor. The government, as Mr. DeCastro noted, the government concedes that the defendant was working in Georgia. That was based on new information that the defendant provided, information that the defendant did not previously provide in prior bail proceedings, the emails that were provided to the court and to the government. The government then investigated and looked into that employment, spoke with the employer, reviewed the emails, reviewed bank statements. And based on that information, the government continued to argue that the defendant remained a flight risk because simply working in Georgia, the government admits, does not end the inquiry as to whether the defendant's a flight risk. And in addition, the government argued that the defendant posed a danger to the community, as Your Honor noted, because we learned through our investigation that the defendant was misusing funds that were put into that bank account by the defendant's employer, Mr. Gaga. And also that the defendant failed to pay back a loan that Mr. Gaga provided to him that was collateralized by the liquor store that was owned by his sister, which we would note is very similar to the scheme that the defendant used in actually the charged crime here. Based on that information, based on the fact that we believe he was engaging in a continuing fraud while he was living in Georgia, and I would note that he was on some state probationary sentence, which requires him not to commit any further crimes, we argued for danger to the community based on that new evidence. What sentence was that? It was the tax charge that Mr. DeCastro noted to before the defendant had a conditional discharge, which required him to comply with certain terms of release, which included comply with the law and not to commit any further crimes. For how long a period of time? Usually there's a time limit on that. Your Honor, I don't know that offhand, but I do know that it was in place while he was in Georgia. He was continuing to appear on that sentence, on that proceeding, I should note, in New York. He paid off some of those taxes that were due, and so he was subject to those conditions while he was residing in Georgia in the fall of 2015 into early 2016. And for those reasons, the government submits that the court should affirm Judge Forrest's ruling. Thank you, Ms. Schor. Mr. DeCastro? Thank you. I think the only thing I would address, and let me do them in reverse order, is the probationary sentence issue. Number one, the government just conceded that he made court appearances in furtherance of that proceeding. So he is coming back and forth to court on a conditional discharge. It's not a probationary sentence. He's not reporting to a probation officer. He has to abide by certain conditions, which is to appear, and the court wants to know status. Mr. Peralta travels from Georgia under his own name and appears in court. This court need not look farther than that to see if he's going to appear. He has always appeared. He has never not appeared. What I find striking is that, in this case, is that every time the government shifts its theory, it does so after we allegedly, we the defense, provide additional evidence. Day one, we argued Mr. Peralta was working. They did nothing to investigate that, despite the fact that the FBI arrested him in his place of business. They argued against the fact that he was evicted from his apartment. No, he fled and threw everything down. They conceded. They proved that he was, in fact, evicted. Thank you. Let me just ask you one question. Do you have a trial date yet set for him? We do. It's May 15th. Thank you both. We'll reserve decision, but we'll get you a decision very shortly. Thank you.